UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HARRY T. RILEY,

        Petitioner,

                                      CASE NO. 13-12717

v.

                                      PAUL D. BORMAN

MARY BERGHUIS,                       UNITED STATES DISTRICT JUDGE

        Respondent.

_____/

**OPINION AND ORDER
DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
DENYING A CERTIFICATE OF APPEALABILITY, BUT
<u>GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL</u>**

Petitioner Harry T. Riley ("Petitioner") has filed a *pro se* habeas corpus petition

under 28 U.S.C. § 2254.  The habeas petition challenges Petitioner's state convictions for

armed robbery, unlawful imprisonment, torture, and first-degree home invasion.

Petitioner alleges that his trial attorney rendered ineffective assistance by not moving to

suppress identification testimony or to sever his trial from that of his co-defendant.

Petitioner further alleges that the trial court abused its discretion by allowing a lay witness

to give his opinion about a conversation he overheard and by ordering the same witness to

answer an incriminating question about the delivery of marijuana to Petitioner.  Finally,

Petitioner alleges that the prosecutor engaged in misconduct by vouching for witnesses

and appealing to the jurors' patriotism.

Warden Mary Berghuis ("Respondent") urges the Court to deny the petition on grounds that two of Petitioner's claims are procedurally defaulted and that his remaining claims are meritless. Having reviewed the pleadings and state-court record, the Court concludes that the state appellate court's decision on Petitioner's claims was not "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Accordingly, the habeas petition must be denied. A procedural history of this case and an analysis of Petitioner's claims follow.

## I. Background

Petitioner and his co-defendant, Noah R. Lovell, III, were tried before a single jury in Livingston County Circuit Court. The charges against them arose from an incident involving an 83-year-old man named John Pickett. The state court summarized the evidence at trial as follows.

> On the day of the incident, Riley went to the victim's back door wearing a work vest and a hard hat under the guise that he worked for a utility company and wanted to look at the victim's property. The victim walked his property with Riley for approximately 45 minutes. Riley was talking on his cellular telephone during a substantial portion of that time. Cellular telephone call logs showed that Lovell's telephone was in the vicinity of the victim's house and that numerous calls were made to Riley at the time of the crime. Riley's vehicle was rented by Lovell.
>
> Riley followed the victim into his house; at that point, the victim noticed a pry bar on the table in his dinette. As the victim reached for the pry bar, Riley punched the victim in the face so hard that it knocked his dentures out of his mouth and knocked his glasses off of his face. Riley then grabbed the victim and pushed him down the stairs. At the bottom of the stairs, Riley continued to beat the victim, punching and kicking his face and body. Riley

2

repeatedly demanded to know where the victim kept his money, and threatened to kill him. Riley also repeatedly poked the victim's arms, chest, and neck with a knife. The victim lost consciousness several times during the beating. Riley then sat the victim in a chair and bound his wrists and ankles with duct tape. Riley kicked the victim's face with such force that i[t] left a shoe print. During the incident, the victim heard a second individual come halfway down the stairs; from his vantage point, the victim could only see the second individual, a white male, from the waist down. The second individual threatened to kill the victim if he did not reveal the location of the money. Meanwhile, Riley took the victim's coin collection. The victim had a broken jaw, broken nose, cracked eye sockets, three broken ribs, and blood on the brain. The victim stayed in the hospital for over a week, and then spent nearly two months in a rehabilitation center.

The next day, Lovell and Riley met with George Wilson who heard them discussing how they were going to sell coins. Wilson also heard Riley berate Lovell for his time-consuming method of ransacking drawers. A receipt from a hardware store indicating the purchase of a hard hat, pry bar, and work gloves was found in the victim's driveway, and Lovell was identified as the individual who purchased the goods.

*People v. Riley*, No. 295838, 2011 WL 4501765, at *1 - *2 (Mich. Ct. App. Sept. 29, 2011) (unpublished).

Neither Petitioner, nor Lovell, testified or presented any witnesses, and, on November 5, 2009, the jury found Petitioner guilty, as charged, of armed robbery, Mich. Comp. Laws § 750.529, unlawful imprisonment, Mich. Comp. Laws § 750.349b, torture, Mich. Comp. Laws § 750.85, and first-degree home invasion, Mich. Comp. Laws § 750.110a(2). On December 11, 2009, the trial court sentenced Petitioner as a habitual offender, fourth offense, to imprisonment for concurrent terms of 75 to 115 years for the robbery, unlawful imprisonment, and torture, and to a consecutive term of 13 years, 4 months to 20 years for the home invasion.

3

After Petitioner filed a claim of appeal in the Michigan Court of Appeals, he moved to remand his case to the trial court for an evidentiary hearing. The Court of Appeals granted Petitioner's motion. Petitioner then filed a motion for new trial on the ground that his trial attorney was ineffective for failing to move to suppress identification testimony and for failing to move for a separate trial from co-defendant Lovell. The trial court held an evidentiary hearing and denied Petitioner's motion for new trial after concluding that trial counsel was not ineffective.

The Michigan Court of Appeals subsequently affirmed Petitioner's convictions and sentences in an unpublished, *per curiam* opinion. *See Riley,* 2011 WL 4501765. On April 23, 2012, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Riley*, 491 Mich. 908 (2012) (table).

On June 19, 2013, Petitioner filed his habeas corpus petition. He raises two claims about his trial attorney, two claims about evidentiary issues, and one claim about the prosecutor. Respondent argues in an answer to the habeas petition that Petitioner's fourth and fifth claims are procedurally defaulted and that Petitioner's other claims are meritless. The Court proceeds directly to the merits of Petitioner's claims without consideration of whether any of Petitioner's claims are procedurally defaulted, because the claims lack substantive merit and a procedural-default analysis "adds nothing but complexity to the case." *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010).

4

## II.  Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."  *Richter*, 562 U.S. at 97.  Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id*. at 411.

5

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### III. Discussion

#### A. Trial Counsel

Petitioner's first two claims allege ineffective assistance of trial counsel. Petitioner claims that his trial attorney should have moved to suppress the victim's identification testimony and to sever Petitioner's trial from that of his co-defendant, Noah Lovell.

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), is clearly established federal law for purposes of Petitioner's ineffective-assistance-of-counsel claims. *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). Under *Strickland*, a defendant must show that his trial attorney's "performance was deficient" and "that the

6

deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*.

The "deficient performance" prong of the *Strickland* test "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*.  "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id*. (internal citation omitted).

To demonstrate that counsel's performance prejudiced the defense, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.  "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111-12 (quoting *Strickland*, 466 U.S. at 693).

7

**1.  Defense Counsel's Failure to Move to Suppress Identification Testimony** (claim one)

Petitioner alleges that his trial attorney was ineffective for failing to move to suppress evidence of Mr. Pickett's identification of him.  This issue arises from a photographic show-up held on November 18, 2008.  A state trooper showed Mr. Pickett a group of pictures at the photographic show-up, and when Pickett stated that he could not identify anyone in the photographic array, the state trooper pointed to Petitioner's photograph and asked Mr. Pickett whether he recognized the person in that photograph.  11/2/09 Trial Tr. at 244, 248, Nov. 2, 2009 (Doc. 11-17).  Although Mr. Pickett stated that he did not recognize the man in the photograph, Petitioner claims that Mr. Pickett's subsequent identification of him at a corporeal line-up was the result of the state trooper's suggestive conduct during the photographic show-up.

### a.  The State-Court Hearing and Rulings

At the post-conviction hearing on Petitioner's claim, Petitioner's trial attorney testified that he made a conscious decision not to file a motion to suppress Mr. Pickett's identification of Petitioner.  His reason for not filing the motion was that he wanted to argue to the jury that the corporeal line-up was tainted by the suggestive photographic show-up.  This supported his defense theory that the prosecution's case was based on misidentification.  According to defense counsel, the state trooper's suggestive conduct during the photographic show-up gave him a basis for challenging the police investigation as a whole, as well as, the identification.  1/3/11 Mot. Hr'g at 24-28, 58 (Doc. 11-22).

8

Defense counsel also stated at the hearing that he had feared the trial court might suppress the suggestive photographic show-up, but rule that testimony about the corporeal line-up was admissible. Such a ruling, he claimed, would have hurt his case and gained him nothing. *Id*. at 62-63.

The state trial court determined that defense counsel was not ineffective for failing to file a motion to suppress the identification testimony. The court opined that it was appropriate trial strategy to elicit testimony about the suggestive photographic show-up and to suggest that the police investigation was sloppy or improper. The court also determined that the result of the proceeding would not have been different if defense counsel had filed the motion, because there was overwhelming evidence of Petitioner's guilt. *Id*. at 107-110. Finally, the court stated that it would have denied the motion to suppress if defense counsel had filed one, because there was an independent basis for Mr. Pickett's identification. *Id*. at 112-13. The Michigan Court of Appeals affirmed the trial court's decision and stated that the trial court did not err in concluding that an independent basis existed for Mr. Pickett's identifications of Petitioner. *Riley*, 2011 WL 4501765, at *3.

### b. Analysis

The Supreme Court has said that "the failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). Instead, Petitioner has the burden of demonstrating that his trial attorney was constitutionally deficient in failing to challenge the photographic show-up in

a motion to suppress and that he suffered prejudice as a result of his counsel's deficient performance.  *Searcy v. Berghuis*, 549 F. App'x 357, 364 (6th Cir. 2013) (citing *Strickland*, 466 U.S. at 687), *cert. denied*, 134 S. Ct. 2708 (2014) .

To demonstrate prejudice, Petitioner "must prove the pretrial identification procedure [was] so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  *Id.* (quotation marks and citations omitted). If the procedure was unduly suggestive, the Court must "evaluate the totality of the circumstances to determine whether the identification nevertheless was reliable."  *Id.* When judging reliability, the Court considers all the circumstances, "including the following factors:  (1) the opportunity of the witness to view the defendant at the initial observation; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the defendant; (4) the level of certainty shown by the witness at the pretrial identification; and (5) the length of time between the initial observation and the identification.  *Howard v. Bouchard*, 405 F.3d 459, 482 (6th Cir. 2005) (citing *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977), and *Neil v. Biggers*, 409  U.S. 188, 199-200 (1972)).

The state trooper's act of pointing to Petitioner's photograph during the photographic show-up and asking Mr. Pickett whether he recognized the man in the photograph was unduly suggestive because the implication was that the police thought Petitioner committed the crimes.  Nevertheless, Mr. Picket did not identify Petitioner in the photographic array even after the state trooper singled out Petitioner's photograph,

10

and the record fails to show that pointing to Petitioner's photograph influenced Mr. Pickett's identification of Petitioner in the subsequent corporeal line-up or at trial.  In fact, at the preliminary examination on February 19, 2009, Pickett testified that he had no memory of the photographic show-up.  2/19/09 Prelim. Examination at 102-03 (Doc. 11-2).  And at trial, Pickett testified that he would not recognize the picture and had no memory of the picture that the state trooper pointed out to him as being Petitioner. 10/27/09 Trial Tr. at 152-53 (Doc. 11-14).

Even if the Court were to assume that the suggestive photographic show-up gave rise to a substantial likelihood of irreparable misidentification, there was an independent basis for Mr. Pickett's identification of Petitioner at the corporeal line-up and at trial.  He spent thirty-five to forty-five minutes walking outside with Petitioner before the assault, *id*. at 94, 110, 185, and he also observed Petitioner when they went inside Pickett's house. Although he lost consciousness at times during the beating, *id*. at 110-11, he claimed that he was unconscious for only a matter of seconds or minutes, *id*. at 194, and when he regained consciousness, he observed Petitioner taking his coins, *id*. at 111.  The Court finds that Mr. Pickett had a good opportunity to view Petitioner during the crimes.

The record does not indicate whether any description Mr. Pickett may have given of the suspect matched Petitioner, but Pickett's degree of attention during the crime apparently was good because he described the incident in detail at trial.  His degree of attention, no doubt, was heightened by the fact that he was the victim of a crime, as opposed to a disinterested bystander or casual observer.  *Howard*, 405 F.3d at 473.

11

Mr. Pickett was certain of his identification of Petitioner at the corporeal line-up after Petitioner was asked to say, "Where's the money?" *Id*. at 213; 11/3/09 Trial Tr. at 209-10 (Doc. 11-18). Additionally, the length of time between the crime and the identification of Petitioner at the corporeal line-up was six weeks, which is not a lengthy amount of time. *Cf. Howard*, 405 F.3d at 484 (stating that "three months between the initial observation and the challenged identification is not a long period of time").

The Court concludes that the suggestive photographic show-up did not give rise to a substantial likelihood of irreparable misidentification, and even if it did, there was an independent basis for Mr. Pickett's identification of Petitioner at the corporeal line-up and at trial. As a result, there is not a substantial probability that a motion to suppress Mr. Pickett's identification of Petitioner would have succeeded. The trial court, in fact, stated that it would have denied a motion to suppress the identification evidence. Defense counsel's performance was not deficient, and it did not prejudice Petitioner's defense. Habeas relief therefore is not warranted on Petitioner's first claim.

### 2. Defense Counsel's Failure to Move for Separate Trials or Juries (claim two)

Petitioner alleges next that his trial attorney was ineffective because he failed to seek a separate trial or even a separate jury from Petitioner's co-defendant, Noah Lovell. According to Petitioner, the two co-defendants had antagonistic and irreconcilable defenses, and his attorney should have known that joinder would inure to the co-defendant's benefit and to Petitioner's detriment.

12

### a. Legal Framework

"Joint trials play a vital role in the criminal justice system." *Richardson v. Marsh*, 481 U.S. 200, 209 (1987). "They promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.' " *Zafiro v. United States,* 506 U.S. 534, 537 (1993) (quoting *Marsh*, 481 U.S. at 210). "For these reasons, [the Supreme Court] repeatedly [has] approved of joint trials." *Id.*

> A defendant is not entitled to severance merely because he might have had a better chance of acquittal in a separate trial. *See Zafiro v. United States*, 506 U.S. 534, 540, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993). Nor does he have a right to a separate trial merely because defendants present antagonistic defenses. *See United States v. Day*, 789 F.2d 1217, 1224 (6th Cir. 1986) (holding that absent some indication that the alleged antagonistic defendants misled or confused the jury, the mere fact that co-defendants blame each other does not compel severance).

*Stanford v. Parker*, 266 F.3d 442, 458 (6th Cir. 2001).

Severance, moreover, is governed by state law, *Hutchison v. Bell*, 303 F.3d 720, 731 (6th Cir. 2002),[1] and, in Michigan, "[s]everance is mandated under MCR 6.121(C)

---

[1]   As explained in *Hedlund v. Ryan*, 750 F.3d 793 (9th Cir. 2014):

> *Zafiro* does not apply to § 2254 cases. *Zafiro* was a direct-appeal case originating in federal district court (i.e., a case in which the Federal Rules of Criminal Procedure applied). *See Collins v. Runnels*, 603 F.3d 1127, 1131–32 (9th Cir. 2010) ("By its own wording, *Zafiro* only applies to federal and not state court trials. It analyzes only the *Federal* Rules of Criminal Procedure applicable to federal district courts."), *cert. denied*, —— U.S. ——, 131 S. Ct. 243, 178 L. Ed. 2d 162 (2010).

*Id.* at 804 (emphasis in original).

only when a defendant demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." *People v. Hana*, 447 Mich. 325, 331 (1994).

### b. Application

At a pretrial hearing on August 20, 2009, counsel for Lovell moved for a separate trial. 10/20/09 Evidentiary Hr'g at 36-37 (Doc. 11-5). The trial court took the motion under advisement, and at a hearing a few days later, both defense attorneys and the prosecutor stated that they wanted one jury. The trial court then ruled that there would be a single trial with one jury. 10/23/09 Mot. Hr'g at 3-6 (Doc. 11-12).

At the post-conviction hearing, Petitioner's trial attorney explained that he agreed to having one trial and one jury because neither defendant made any statements against the other defendant and there were no conflicting defenses. Counsel for Lovell had assured him that Lovell had the same defense as Petitioner: that he was not at the crime scene. Petitioner's attorney, therefore, had no reason to believe that severance was necessary. 1/3/11 Mot. Hr'g at 35-39, 68-69, 77 (Doc. 11-22).

Petitioner's attorney also did not see any tactical advantage to obtaining severance. *Id*. at 77. He testified at the hearing that it was helpful to have one trial and one jury because counsel for Lovell argued that reasonable doubt existed as to the circumstantial evidence and that prosecution witness George Wilson was not credible because Wilson had ill feelings toward the Lovell family. In defense counsel's opinion, Lovell's attorney actually helped Petitioner's attorney attack the prosecution's case. *Id*. at 73-74.

14

The trial court ruled at the conclusion of the hearing that Petitioner's attorney was not ineffective for stipulating to a joint trial and for failing to move for a separate trial. The trial court noted that the defendants' defenses were not irreconcilable and that it was proper trial strategy to have one trial to create more reasonable doubt. *Id*. at 110-12.

The Michigan Court of Appeals agreed that the defendants' defenses were not mutually exclusive or irreconcilable, because

> Riley's defense theory was misidentification coupled with police misconduct. Lovell's defense theory was that he was not present, or that if he was present, he was merely present, and not an aider and abettor . . . ; the jury would not have to believe one codefendant at the expense of the other . . . . If the jury found that Riley was misidentified, it could also find that Lovell was not present, or that if he was present, he was not an aider and abettor.

*Riley*, 2011 WL 4501765, at *4.

Although counsel for Lovell blamed Petitioner for the crime during his closing argument,[2] Petitioner's attorney testified at the post-conviction hearing that he had no

---

[2] In his closing argument, Lovell's attorney said:

> Mr. Pickett telling you on the witness stand that Harry Riley is the guy who beat him up and took his coins. . . . I couldn't think of any better direct evidence in a case then (sic) that.
>     And I may trample upon Mr. Riley and/or his attorney during this closing argument, but I don't care. That's not my problem. Mr. Riley's not my problem, okay. And that is definite direct evidence that a crime occurred.

11/4/09 Trial Tr. at 181-82 (Doc. 11-19). Later in his argument Lovell's attorney said:

> I submit to you that Riley acted on his own. When the plan went bad Riley took matters into his own hand and maybe the only way he knew

15

reason to believe that counsel for Lovell would try to argue that the crime was all Petitioner's fault.  1/3/11 Mot. Hr'g at 38-39 (Doc. 11-22).  Petitioner's attorney was not ineffective for relying on the representations that Lovell's attorney made to him before trial.

In conclusion, the defendants' defenses, as contemplated before trial, were not mutually exclusive, and there was some benefit to a joint trial with one jury.

_____

> how.  Because he acted immediately.  And as soon as Mr. Pickett started to question[,] the next thing you know he got sucker punched and then he was beaten.
>
> And it's obvious from these facts that Mr. Riley was the only person who beat or touched Mr. Pickett that day.  Mr. Pickett testified that the second man in the house never touched him . . . .

*Id*. at 201.  Continuing, counsel for Lovell argued that

> Mr. Riley went off the reservation here.  If we look at these two people having some type of plan to commit a home invasion when it went wrong Mr. Riley went off the reservation.  And Mr. Lovell or whoever was the second person in that home . . . is not responsible for these other crimes.
>
> . . . .
>
> And I submit that this second man once Riley went off the reservation was simply merely present in that home.  And maybe he didn't act because he also was afraid of Mr. Riley, I don't know.
>
> . . . [E]ven if you believe at the conclusion of that that Mr. Lovell was the second person in the home he's only guilty of home invasion, he's not guilty of these other crimes.  Those are solely upon Mr. Riley.

*Id*. at 204-06.  In his rebuttal argument, the prosecutor described these arguments as throwing Petitioner under the bus.  *Id*. at 223.

16

Consequently, there is not a substantial probability that Petitioner would have prevailed if he had moved for a separate trial. He would not have been able to show under *Hana* that his substantial rights would be prejudiced and that severance was the necessary means of rectifying the potential prejudice.

The trial court, moreover, instructed the jurors at the beginning and end of the trial that the joint trial was not evidence that the defendants were associated with each other or that either one was guilty. The court charged the jurors to consider each defendant separately, because each defendant was entitled to have his case decided on the evidence and the law that applied to him. 10/27/09 Trial Tr. at 14-15 (Doc. 11-14); 11/4/09 Trial Tr. at 103-04 (Doc. 11-19).

For all the reasons given above, trial counsel's failure to file a motion for severance did not amount to deficient performance, and the allegedly deficient performance did not prejudice the defense. Therefore, trial counsel was not ineffective, and Petitioner has no right to relief on the basis of his second claim.

**B. Evidentiary Issues**

Petitioner's third and fourth claims challenge the admission of certain evidence at Petitioner's trial.

### 1. George Wilson's Opinion Testimony
(claim three)

Petitioner alleges that the trial court abused its discretion and deprived him of due process when it permitted the prosecution to play for the jury an excerpt of George

17

Wilson's tape-recorded statement to Detective Sergeant Sean Furlong.  During his

statement to Detective Furlong, Wilson mentioned a conversation that he overheard

between Petitioner and Noah Lovell.  Wilson told Detective Furlong that, on October 30,

2008, he heard Petitioner and Lovell talking about some coins or change.  Wilson also

claimed to have heard the defendants discuss ransacking some drawers.  Wilson informed

Detective Furlong that Riley admonished Lovell for starting with the top drawer and

working his way down to the bottom drawer instead of starting with the bottom drawer

and moving upward.  At a pretrial hearing on whether Wilson's statement to the detective

was admissible at trial, Wilson testified that he concluded from the co-defendants'

conversation about coins and ransacking drawers that they were talking about the robbery

involving John Pickett.  10/20/09 Evidentiary Hr'g, at 21-37 (Doc. 11-11).

Petitioner contends that admitting Wilson's tape-recorded statement to Detective

Furlong in evidence was improper because Wilson concluded from the defendants'

conversation that they were guilty of the assault on Mr. Pickett.  Petitioner claims that

Wilson's opinion was inadmissible because the Michigan Rules of Evidence generally

prohibit a lay witness from offering an opinion.  Petitioner also claims that the trial court

erroneously admitted the recording under the recorded-recollection exception to the

hearsay rule, because Wilson testified that his memory was the same on the day he

testified as on the day that he overheard the defendants' conversation.  The Michigan

Court of Appeals stated on review of Petitioner's claim that no error occurred because the

challenged testimony was not admitted at trial.

18

It appears that the same excerpt of George Wilson's tape-recorded statement which was played at the pretrial hearing was also played at Petitioner's trial. The recorded material was not transcribed at trial, *see* 11/3/09 Trial Tr. at 81 (Doc. 11-18), but it was transcribed at the pretrial hearing, *see* 10/20/09 Evidentiary Hr'g at 32-36 (Doc. 11-11), and the length of the time that it took to play the recording (three minutes) was the same at both proceedings. Assuming then, that the recording played at both proceedings was the same, the Michigan Court of Appeals was correct in stating that Wilson's incriminating testimony at the pretrial hearing – that Petitioner and Lovell were talking about the incident with Mr. Pickett when they conversed about coins and ransacking drawers – was not admitted at Petitioner's trial. Wilson merely claimed at trial that he overheard bits and pieces of Petitioner's and Lovell's conversation about coins or change and formed an opinion based on what he had read on the Internet and heard from other people. 11/3/09 Trial Tr. at 157-58 (Doc. 11-18). Contrary to what Petitioner alleges, Wilson did not express an opinion on Petitioner's guilt or innocence. Nor did Wilson testify that the defendants' conversation led him to conclude that the defendants were guilty of the assault on Mr. Pickett.

Petitioner's claim lacks merit for additional reasons. The contention that the trial court violated the Michigan Rules of Evidence is not a cognizable claim on federal habeas review. *Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009). Furthermore, the trial court correctly concluded at the pretrial hearing that the contested statements were not testimonial and, therefore, did not violate Petitioner's right of confrontation under

19

*Crawford v. Washington*, 541 U.S. 36 (2003).

Even if constitutional error occurred, cell phone records linked Petitioner to Lovell at the time of the crimes and Mr. Pickett identified Petitioner as one of the perpetrators of the crime.  Additionally, State Trooper Christopher Corriveau was permitted to testify that, according to the information he had, Petitioner was the person who stalled Mr. Pickett outside his home while Lovell ransacked Pickett's residence on October 29, 2008.  10/28/09 Trial Tr. at 206 (Doc. 11-15).  There was additional evidence that Petitioner left the State of Michigan after the crimes, and when state troopers in Nebraska stopped him and his girlfriend, they found false identification for Petitioner on him and in his girlfriend's purse.  11/3/09 Trial Tr. 8-19, 29-32 (Doc. 11-18).  And even though cell phone records placed Petitioner in Michigan on the day of the crimes, he informed Nebraska officials that he had not been in the State of Michigan since sometime between 2004 and 2006.  *Id*. at 39.

Given the substantial amount of evidence against Petitioner, the alleged error in playing the excerpt of George Wilson's statement to a state detective could not have had a " 'substantial and injurious effect or influence' " on the jury's verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  Thus, the error was harmless, and Petitioner is not entitled to relief on the basis of his third claim.

### 2.  George Wilson's Testimony about Marijuana, and Trial Counsel's Failure to Object (claim four)

Petitioner alleges that the trial court deprived him of a fair trial when it ordered George Wilson to answer a question by Noah Lovell's attorney as to whether Wilson had delivered marijuana to Petitioner.  When ordered to answer the question, Wilson admitted that he had delivered marijuana to Petitioner on October 30, 2008, even though he knew it was illegal to deliver marijuana to someone.  11/3/09 Trial Tr. at  144-47 (Doc. 11-18). The prosecutor subsequently elicited testimony from Detective Sergeant Furlong that Wilson had told him that he sold marijuana to Petitioner when he first met Petitioner.  *Id*. at 250-51.

Petitioner claims that evidence of a delivery of marijuana was irrelevant and unfairly prejudicial because it portrayed him as a perpetrator of crimes.  Petitioner also alleges that his trial attorney was ineffective for failing to object to the evidence.

The Michigan Court of Appeals reviewed Petitioner's claim for "plain error" because Petitioner did not preserve the claim for appellate review by objecting at trial. The Court of Appeals concluded that plain error did not occur because counsel for Lovell raised the issue in an effort to attack Wilson's credibility by demonstrating that Wilson cooperated with the police to avoid prosecution for delivery of marijuana.  The Court of Appeals also stated that the evidence was not substantially outweighed by the danger of unfair prejudice.

21

As for Petitioner's claim about his trial attorney, the Court of Appeals concluded that defense counsel was not ineffective for failing to object to evidence about a delivery of marijuana.  The Court of Appeals pointed out that counsel may have decided that an objection would emphasize Petitioner's receipt of the marijuana and that Petitioner benefitted from the attack on Wilson's credibility.

As noted above, a state court's rulings on the admission or exclusion of evidence usually is not questioned on habeas corpus review.  *Seymour*, 224 F.3d at 552.  A state-court's evidentiary error rises to the level of a federal constitutional claim warranting habeas corpus relief only if "the error render[ed] the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment."  *McAdoo,* 365 F.3d at 494.  Furthermore, an attorney is constitutionally ineffective only if his his performance was deficient and the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

It was not fundamentally unfair for the trial court to compel George Wilson to testify about his delivery of marijuana to Petitioner because the focus of the testimony was on Wilson's illegal conduct, not Petitioner's.  And counsel for Lovell used the evidence to attack Wilson's credibility by showing that Wilson cooperated with the police to avoid prosecution for the delivery of marijuana, among other things.  As such, the testimony benefitted Petitioner.

Even if the trial court erred in admitting the testimony, the evidence was a minor part of a lengthy trial in which the evidence against Petitioner on the charged offenses

was overwhelming. The Court therefore concludes that testimony concerning George Wilson's delivery of marijuana to Petitioner could not have had a "substantial and injurious effect or influence" on the jury's verdict and was harmless. *Brecht,* 507 U.S. at 623.

For similar reasons, defense counsel's failure to object to the evidence did not amount to ineffective assistance. Defense counsel's failure to object to evidence that Wilson delivered marijuana to Petitioner could not have prejudiced the defense in a case where Petitioner was charged with much more serious crimes and where the evidence against him on the charged offenses was overwhelming. In the words of Petitioner's trial attorney at the post-conviction hearing, "Use of marijuana in a torture and home invasion[,] false imprisonment case . . . was not a major issue to be concerned about." 1/3/11 Mot. Hr'g at 76 (Doc. 11-22). Petitioner therefore has no right to relief on the basis of his fourth claim.

## C. The Prosecutor (claim five)

In his fifth and final claim, Petitioner alleges that the prosecutor deprived him of a fair trial by eliciting testimony regarding two prosecution witnesses' service in the military and by appealing to the jurors' patriotism. Petitioner also contests the prosecutor's closing argument where he referred to the witnesses as veterans. Finally, Petitioner contends that his trial attorney was ineffective for failing to object to the prosecutor's questions and comments.

23

The Michigan Court of Appeals reviewed Petitioner's claim for "plain error" because Petitioner did not object to the prosecutor's comments at trial, nor request a cautionary jury instruction.  The Court of Appeals concluded that the alleged error did not affect Petitioner's rights and, therefore, Petitioner failed to demonstrate plain error.  As for Petitioner's claim about trial counsel, the Court of Appeals stated that, because the prosecutor's comments were not improper, any objections would have been meritless, and counsel was not ineffective for failing to raise futile objections.

### 1.  Legal Framework

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).

> [I]t "is not enough that the prosecutors' remarks were undesirable or even universally condemned."  *Darden v. Wainwright*, 699 F.2d [1031, 1036 (11th Cir. 1983)].  The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).  Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power."  *Id.*, at 642, 94 S.Ct., at 1871.

*Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quotation marks and citations omitted).

> In deciding whether prosecutorial misconduct mandates that habeas relief
> be granted, the Court must apply the harmless error standard. *Eberhardt v.*
> *Bordenkircher*, 605 F.2d 275 (6th Cir. 1979). The Court must examine "the
> fairness of the trial, not the culpability of the prosecutor." *Serra v.*
> *Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir.
> 1993)(quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 947
> (1982)), *cert. denied*, 510 U.S. 1201, 114 S.Ct. 1317, 127 L.Ed.2d 666
> (1994).

*Id.*

### 2. Application

The prosecutor asked John Pickett whether he had performed any military service.

Pickett responded by describing his three and a half years in the United States Navy

during World War II. The prosecutor's questions on this issue and Pickett's answers

cover almost one and a half pages of transcript. 10/27/09 Trial Tr. at 66-67 (Doc. 11-14).

The prosecutor also asked prosecution George Wilson whether he had performed

any military service. Wilson's response was brief. He simply explained that he served in

the 82nd Airborne Army until 1974. 11/3/09 Trial Tr. at 62-63 (Doc. 11-18).

In addition to the prosecutor's questions about the witnesses' military service, he

informed the jury in his opening statement that Mr. Picket, at age 19,

> went off to Europe with the U.S. Navy to fight World War II. Had to get
> ready when he was up in Scotland for a little mission that they were headed
> on, didn't realize where he was headed, but he ended up driving a boat
> filled with soldiers nine different times to the beaches at Normandy during
> one of the bloodiest battles of World War II. Finished his service in 1946 . .
> . .

10/27/09 Trial Tr. at 18-19 (Doc. 11-14). And, in his closing argument, the prosecutor

stated that "there is a higher calling amongst those that are veterans" and that "these men

even after their service is done will put themselves on the line for a fellow soldier."

11/4/09 Trial Tr. at 138 (Doc. 11-19).

Although Petitioner classifies the prosecutor's questions and remarks about

Pickett's and Wilson's military history as "vouching,"

> "[i]mproper vouching occurs when a prosecutor supports the credibility of a
> witness by indicating a personal belief in the witness's credibility [,]
> thereby placing the prestige of the office of the [prosecutor] behind that
> witness." *United States v. Trujillo*, 376 F.3d 593, 607 (6th Cir. 2004)
> (internal quotation marks omitted). "Improper vouching involves either
> blunt comments or comments that imply that the prosecutor has special
> knowledge of facts not in front of the jury." *Id*. at 607–08 (internal
> alterations and quotation marks omitted).

*United States v. Garcia*, 758 F.3d 714, 723 (6th Cir.), *cert. denied*, 135 S. Ct. 498 (2014).

The prosecutor in Petitioner's case did not indicate a personal belief in Pickett's or

Wilson's credibility. Nor did he imply that he knew something that the jury did not

know. And even though a prosecutor's appeal to the jury's patriotism can be problematic,

the Court's determination of whether a prosecutor's comments were calculated to incite

prejudice and passion in the jury is informed by the Supreme Court's opinion in *Viereck*

*v. United States*, 318 U.S. 236 (1943). *United States v. Solivan*, 937 F.2d 1146, 1151 (6th

Cir. 1991). In *Viereck,* the prosecutor made the following remarks during closing

arguments in a case that was tried during World War II:

> In closing, let me remind you, ladies and gentlemen, that this is war. This is
> war, harsh, cruel, murderous war. There are those who, right at this very
> moment, are plotting your death and my death; plotting our death and the
> death of our families because we have committed no other crime than that
> we do not agree with their ideas of persecution and concentration camps.

26

> This is war. It is a fight to the death. The American people are relying upon you ladies and gentlemen for their protection against this sort of crime, just as much as they are relying upon the protection of the men who man the guns in Bataan Peninsula, and everywhere else. They are relying upon you ladies and gentlemen for their protection. We are at war. You have a duty to perform here.
>
> As a representative of your Government I am calling upon every one of you to do your duty.

*Viereck*, 318 U.S. at 247 n.3. The Supreme Court found these remarks to be "highly prejudicial" and "offensive to the dignity and good order with which all proceedings in court should be conducted" because the remarks were "wholly irrelevant to any facts or issues in the case" and their only purpose was to arouse the jury's passion and prejudice. *Id.* at 248, 247.

Petitioner's case is distinguishable in that the prosecutor did not urge the jury to convict Petitioner as a matter of conscience or patriotism. In fact, it appears that the prosecutor may have intended to show that George Wilson testified for the prosecution out of respect for a fellow veteran. Immediately after making the remark that "there is a higher calling amongst those that are veterans" and that these men will put themselves on the line for a fellow soldier," the prosecutor said: "I would suggest . . . that's what motivated Mr. Wilson to come in to talk to [a detective] and eventually come before you and tell you what he observed." 11/4/09 Trial Tr. at 138-39 (Doc. 11-19). This remark was supported by Mr. Wilson's prior testimony that he was motivated in part to contact Detective Furlong by his concern over John Pickett and the fact that Mr. Pickett did not deserve what happened to him. 11/3/09 Trial Tr. at 93 (Doc. 11-18).

Even if the prosecutor's remarks were improper, they were harmless in light of the strength of the evidence against Petitioner and the trial court's jury instructions. The trial court charged the jurors not to let sympathy or prejudice influence their decision. 11/4/09 Trial Tr. at 98 (Doc. 11-19). The court also stated that the attorneys' arguments were not evidence. *Id*. at 100.

For similar reasons, defense counsel's failure to object to the prosecutor's questions and remarks did not amount to ineffective assistance. The prosecutor's conduct was not improper, and even if it were, it was not so egregious as to render Petitioner's trial unfair. Consequently, defense counsel was not ineffective for failing to object. Habeas relief is not warranted on Petitioner's fifth and final claim regarding prosecutorial misconduct and ineffective assistance of trial counsel.

### IV.  Conclusion

The state appellate court's adjudication of Petitioner's claims on the merits was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable application of the facts. As for the claims that the state court reviewed for "plain error," those claims are meritless. Overall, the state appellate court's decision was not "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Accordingly, the petition for a writ of habeas corpus is DENIED.

## V. Denial of a Certificate of Appealability

Before petitioner may appeal this Court's decision, a certificate of appealability must issue.  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).   "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Reasonable jurists would not find the Court's assessment of Petitioner's claims debatable or wrong, nor conclude that the issues deserve encouragement to proceed further.  The Court therefore declines to grant a certificate of appealability.  Petitioner nevertheless may proceed *in forma pauperis* on appeal if he appeals this decision, because he was granted *in forma pauperis* status in this Court, and an appeal could be taken in good faith.  Fed. R. App. P. 24(a)(3)(A).

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  January 12, 2016

29

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 12, 2016.

s/Deborah Tofil_____
Case Manager